RECORD NO. 14-4122

IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

LAMBROS KATSIPIS,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT NORFOLK

**OPENING BRIEF OF APPELLANT
LAMBROS KATSIPIS**

Alan H. Yamamoto
ATTORNEY AT LAW
643 South Washington Street
Alexandria, Virginia 22314
(703) 684-4700
yamamoto.law@verizon.net

*Counsel for Appellant*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................... ii

JURISDICTIONAL STATEMENT ........................................ 1

STATEMENT OF ISSUES PRESENTED ................................ 1

STATEMENT OF THE CASE ........................................... 1

SUMMARY OF THE ARGUMENTS ................................... 6

ARGUMENTS .......................................................... 6

I.    THE COURT ERRED IN ADMITTING THE TESTIMONY OF KRISTY JUAIRE ........................................................ 6

II.   THE COURT ERRED IN DENYING APPELLANT'S MOTION IN LIMINE TO EXCLUDE BILGE WATER COMPARISON EVIDENCE ....................................................... 10

CONCLUSION ......................................................... 13

CERTIFICATE OF COMPLIANCE .................................... 14

CERTIFICATE OF SERVICE .......................................... 15

# TABLE OF AUTHORITIES

**CASES**

*Daubert v. Merrell Dow Pharmaceuticals,* Inc., 509 U.S. 579 (1993) . . . . . . . 8, 9

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) . . . . . . . . . . . . . . . . . . . . . 9

*United State v. Barsanti*, 943 F.2d 428 (4th Cir. 1991) . . . . . . . . . . . . . . . . . . . . 7

*United States v. Crisp*, 324 F.3d 261 (4th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Dorsey*, 45 F.3d 809 (4th Cir. 1995) . . . . . . . . . . . . . . . . . . . . 8

*United States v. Forrest*, 429 F.3d 73 (4th Cir. 2005) . . . . . . . . . . . . . . . . . . . . 6

*United States v. Johnson*, 54 F.3d 1150 (4th Cir. 1995) . . . . . . . . . . . . . . . . . . 11

*United States v. Loayza*, 107 F.3d 257 (4th Cir. 1997) . . . . . . . . . . . . . . . . . . 12

*United States v. Love*, 134 F.3d 595 (4th Cir. 1998) . . . . . . . . . . . . . . . . . . . . 10

*United States v. Myers*, 280 F.3d 407 (4th Cir. 2002) . . . . . . . . . . . . . . . . . . . 10

*United States v. Tedder*, 801 F.2d 1437 (4th Cir. 1986) . . . . . . . . . . . . . . . . . . 10

**OTHER REFERENCES**

18 U.S.C. § 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

18 U.S.C. § 371 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 1505 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 1519 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 3231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

33 U.S.C. § 1908(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Federal Rule of Appellate Procedure 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Federal Rule of Appellate Procedure 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Federal Rule of Evidence 403 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

Federal Rule of Evidence 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8, 9

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over this matter pursuant to 18 U.S.C. § 3231. The district court entered its judgment of conviction on December 13, 2013. Appellant filed a timely notice of appeal on December 26, 2013. The Fourth Circuit Court of Appeals has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and Federal Rules of Appellate Procedure 3 and 4. This appeal is from a final order disposing of all claims.

## STATEMENT OF ISSUES PRESENTED

1. Whether the district court erred in denying appellant's motion to strike the testimony of Kristy Juaire.

2. Whether the district court erred in denying appellant's motion in limine to exclude the bilge water comparison chart.

## STATEMENT OF THE CASE

On May 22, 2013, Kassian Maritime Navigation Agency, Ltd., Angelex Ltd., and appellant Lambros Katsipis were indicted in a 8 count indictment charging in Count 1, Conspiracy in violation of 18 U.S.C. § 371; in Counts 2-4, Falsification of Records in violation of 18 U.S.C. §§ 1519 and 2; in Counts 5-7, Knowing Failure to Maintain an Accurate Oil Record Book in violation of 33 U.S.C. § 1908(a) and 18 U.S.C. § 2; and in Count 8, Obstruction of Justice in

violation of 18 U.S.C. §§ 1505 and 2.  JA 26-41.

The appellant was the chief engineer on the M/V Antonis G. Pappadakis, a vessel registered under the flag of Malta and operated by Kassian Maritime Navigation Agency, Ltd. and owned by Angelex Ltd.  The Pappadakis was engaged in international commercial maritime operations and transported bulk cargo to and from various ports around the world.  JA 26.

On April 15, 2013, the Coast Guard conducted a port state control examination on the Pappadakis in Norfolk, Virginia.  JA 335.  The oil record books were examined.  JA 338-40.  The engineers could not get the oily water separator to run.  JA 348, 350, 378.  During the course of the examination the second engineer Nathaniel Enicola gave a note and a camera containing photos to the Coast Guard investigators.  JA 352, 261-62.  The photos depicted a pump and a hoses running from the bilge tank up two or three decks to the marine sanitation device.  JA 353, 238-59.  The bilge tank and the marine sanitation device were inspected and their bolts appeared to have been removed at some point.  JA 354-57.

It was the government's contention that appellant Katsipis ordered the engine crew to discharge machinery space bilge water containing oily water overboard through the Marine Sanitation Device, bypassing the ship's Oily Water

2

Separator and other required pollution prevention equipment. JA 32-3. The government further contended that appellant Katsipis knowingly falsified the Oil Record Book by failing to record that the machinery space bilge water had been discharged overboard through the ship's Marine Sanitation Device. JA 33.

Members of the Pappadakis crew were interviewed and denied knowledge of the hoses and pump. JA 360-61, 496, 1360. In subsequent interviews the crew members admitted not being truthful about the hoses and pump. JA 361 431, 598, 621, 703, 1360. The engine room crew testified that the hoses and pump were used to pump water from the bilge tank to the sewage tank. JA 240, 241, 253, 420. Appellant Katsipis, the first engineer, was alleged to have given the order to the third engineer to use the pump and hoses. JA 244, 266, 563. Engine room crew members testified that appellant Katsipis instructed them not to say anything to the Coast Guard about the hoses and pump. JA 263, 430, 568.

The engine room crew received immunity from prosecution and their hotel was paid by the government and they received a $100 per day food allowance. JA 372, 438. Several crew members were also interested in the reward for reporting MARPOL crimes and at least one crew member had hired an attorney to pursue the reward. JA 278-81, 439, 488.

Lt. j.g. Crystal Tucker reviewed the oil record books of the Pappadakis, one

book from 3/20/11 to 10/22/11, one book from 10/22/11 to 7/9/12, and one book from 7/14/12 to 4/14/13. JA 891. Tucker prepared a chart and testified that the record books indicated that the previous chief engineer used the oily water separator 16 times between May 15, 2011 to April 30, 2012 while appellant Katsipis used oily water separator 7 times between May 1, 2012 to April 15, 2013. JA 244, 1186-87. Tucker admitted that there was no indication of the conditions of the ship during those times nor any indication of the amount of water produced. JA 1188-89. The data did not indicate whether pumps in one year leaked more than pumps in another year. Tucker admitted she did not take into consideration shore-side discharges of the contents of the bilge holding tanks. JA 1189.

Coast Guard Investigative Service special agent Asher Thomas testified that he assisted in the investigation on the Pappadakis. JA 1022. During the course of the investigation, Thomas gave his business card containing his phone number to the crew members. JA 1343-44. Second engineer Enicola testified that he sent Thomas only one text message which stated that a crewman wanted to cooperate. JA 559. Thomas testified that he received approximately 10 text messages from second engineer Enicola. JA 1345-46. Thomas attempted to download the text messages but the phone programming would not allow it and he did not attempt to photograph the texts. JA 1350. After being transferred to Cleveland, Thomas

4

intentionally deleted the text messages without contacting the Coast Guard IT. JA 1348, 1350, 1371-72. Thomas reported deleting the text messages a few days later. JA 1352. Thomas admitted that he should have preserved the text messages. JA 1348-49. Thomas testified that the gist of the messages was that crew members were sorry about lying and wanted to talk to the Coast Guard. JA 1362, 1373.

Kristy Juaire, a chemist with the Coast Guard Marine Safety Laboratory, testified as an expert identifying petroleum substances collected from the Pappadakis by the investigators. JA 1098. Juaire analyzed samples taken during the inspection of the Pappadakis and prepared a report of her findings. JA 122-28. According to the report, the samples contained lubricating oil, fuel oil, petroleum oil and/or petroleum hydrocarbons. Juaire testified that samples from the bilge water holding tank starboard, the oily bilge tank port side and the sludge tank port side were chemically different and did not match. JA 1110-11. Juaire agreed that if the sewage tank or the MSD was coated with tar epoxy it could yield a hydrocarban reading. JA 1161. Juaire testified some samples indicated the presence of lubricating oil but that there were insufficient petroleum in the samples taken from the hoses and pump to do a comparison. JA 1145-51, 1158-60, 1164-67. Juaire testified that she was not asked to compare the samples from

5

the bilge holding tank to the marine sanitary device. JA 1138. Juaire admitted that she did not know whether the petroleum was there before appellant Katsipis was on the ship, while he was on the ship or before the owners even took possession of the ship. JA 1133, 1162. Juaire admitted that she did not know the source of the petroleum she tested. JA 1134, 1162. Juaire did not know how much petroleum was there or the conditions that lead to the petroleum being there. JA 1134, 1162.

## SUMMARY OF THE ARGUMENT

The expert testimony of Kristy Juaire was neither relevant nor reliable and should have been excluded by the district court. The bilge water comparison chart prepared by Crystal Tucker was misleading and unduly influenced the jury and should have been excluded by the district court.

## ARGUMENT

### I. THE COURT ERRED IN ADMITTING THE TESTIMONY OF KRISTY JUAIRE.

### A. STANDARD OF REVIEW

The district court "performs an important 'gatekeeping' function in deciding whether to admit expert testimony under Federal Rule of Evidence 702." *United States v. Forrest*, 429 F.3d 73, 80 (4th Cir. 2005). The court has "broad discretion

to determine whether to admit expert testimony. . . and will not be reversed absent a clear abuse of discretion." *United States v. Barsanti*, 943 F.2d 428, 432 (4th Cir. 1991).

**B.    ARGUMENT**

The court abused its discretion in admitting the testimony of Kristy Juaire, a chemist with the U.S. Coast Guard Marine Safety Laboratory, who testified as an expert identifying petroleum substances collected from the Pappadakis. JA 1098.

Juaire's testimony added nothing to the evidence elicited by the government regarding the oil report book or the dumping of untreated oily water overboard. As expected, Juaire testified that the samples from the bilge water holding tank starboard, the oily bilge tank port side and the sludge tank port side were chemically different and did not match. JA 1110-11. Juaire's expert testimony of why the samples did not match added nothing to the case. In fact, Juaire's testimony was more confusing than instructive because her testimony about samples containing petroleum oil, petroleum hydrocarbons, lubricating oil or fuel did nothing to aid the jury in resolving the case. Juaires's testimony that many of the samples did not contain enough quantity for comparison was also more confusing than instructive. Juaire's response that the samples contained oil was not instructive since some form of oil was found in all the samples except the

incinerator waste oil tank port side.  After testifying that samples she had examined contained petroleum oil, Juaire admitted that she did not know the source of the petroleum she tested, when it got there, how and how much was placed there or the conditions they were place there.  JA 1134, 1162.  Juaire also testified that there was insufficient petroleum in the samples taken from the hoses to do a comparison of the type of petroleum.  JA 1158-60.  Juaire's testimony of the petroleum samples did not establish how the alleged petroleum or hydrocarbons came to be present in the locations sampled; when the petroleum or hydrocarbons were first present in the locations sampled; or where the petroleum or hydrocarbons came from.  MARPOL and APPS regulations require oily water from machinery spaces to contain petroleum concentrations of 15 part per million or less to be dumped overboard.  The regulations do not have any requirements from oily discharges from other locations in the ship.

    Pursuant to Fed. R. Evid. 702, the court is to insure that the testimony or other evidence is not only relevant and also reliable.  *Daubert v. Merrell Dow Pharmaceuticals,* Inc., 509 U.S. 579, 589 (1993).  The court must decide whether the expert testimony is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute. *United States v. Dorsey*, 45 F.3d 809, 813 (4th Cir. 1995) (citing *Daubert*, 509 U.S. at 509-91; Fed. R. Evid. 403).  The court is to

determine 1) whether the expert is qualified to testify competently regarding the matter to be addressed; 2) whether the expert's methodology is scientifically valid and sufficiently reliable; and 3) whether the testimony will assist the trier of fact to understand or determine the fact in issue. *United States v. Crisp*, 324 F.3d 261, 265 (4th Cir. 2003) (citing Fed. R. Evid. 702 and *Daubert*, 509 U.S. at 589). The trial judge must ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 589-91. Rule 702 "requires a valid . . . connection to the pertinent inquiry as a precondition to admissibility." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999).

Jaire's expert testimony did not corroborate the testimony of other witnesses and had little probative value. Because Jaire's testimony did not answer the who, what, when, why and how regarding the petroleum from the Pappadakis about which she testified, her testimony was at best confusing and uninstructive to the jury. While Her testimony did nothing to aid the trier of fact in reaching a verdict, because it was expert testimony, the jury would have given her testimony undue weight and would have unduly influenced the jury's deliberations as to the appellant's guilt or innocence.

The court abused its discretion and failed in the performance of its Rule 702 "gatekeeping" function.

9

## II.  THE COURT ERRED IN DENYING APPELLANT'S MOTION IN LIMINE TO EXCLUDE BILGE WATER COMPARISON EVIDENCE

### A. STANDARD OF REVIEW

This Court reviews the admission of evidence over a Rule 403 objection for abuse of discretion giving the district court broad deference. *United States v. Love*, 134 F.3d 595, 603 (4th Cir. 1998); *United States v. Myers*, 280 F.3d 407, 413-14 (4th Cir. 2002).

### B. ARGUMENT

The court permitted the introduction of a chart prepared by Lt. j.g. Crystal Tucker depicting the number of times the oily water separator was used during an 11½ month span by the former chief engineer and a subsequent 11½ month span by the appellant. The chart indicated that the oily water separator was used by the former chief engineer 16 times while the appellant used the oily water separator 7 times. The court allowed the chart to be entered as a summary of evidence contained in the oil record books over the appellant's objection. JA 1181.

Pursuant to Fed. R. Evid. 403, admissible evidence may be excluded if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury or needlessly presenting cumulative evidence. *See, e.g. United States v. Tedder*, 801 F.2d 1437, 1444 (4th Cir. 1986).

While the Tucker's chart summarized information contained in the oil record books, allowing the presentation of a chart to show the oily water separator use spotlighting two different times periods mislead and unduly influenced the jury who were not presented with any evidence of the differences in length of the ship's trips, number of ports, type of cargo, weather conditions and other variables which factored into the number of times the oily water separator was used.  Since the crew of the Pappadakis had changed over completely there was no one who could testify as to the conditions and factors during the prior chief engineer's time on board the Pappadakis.  Coast Guard Petty officer Jeffrey Pennington, a port state control examiner for over eight years, testified that the amount of bilge water produced was not constant but dependant on factors such as leaks, condensation produced due to the ship's location, need for new gaskets and other factors. Pennington admitted that it was not fair to compare one time period with another. JA 522-23.

    While the use of summary charts is approved and encouraged, particularly when numerous documents or other items are being summarized, this Court has stressed that summary charts are not to be used to supplement expert testimony but only for complex cases with a large number of witnesses and extensive evidence. *United States v. Johnson* 54 F3d 1150 1156 (4th Cir. 1995).  Use of summary

11

charts are permitted depending on the complexity and length of the case as well as the number of witnesses and exhibits. *United States v. Loayza*, 107 F.3d 257, 264 (4th Cir. 1997). The appellant's case did not involve complexity nor were the number of witnesses and exhibits extraordinary. The primary issue in appellant Katsipis's case was simply whether oily water had been dumped overboard without being passed through the oily water separator and had the oil record book been accurately kept by Katsipis.

The government produced engine crew members who testified that they observed the appellant order the crew to dump oily water overboard without passing it through the oily water separator. The government's use of the chart to demonstrate the difference in usage of the oily water separator on the ship during two different time periods under different conditions unduly prejudiced the jury and confused the jury as to the issues in the case. While the government used the chart to contend that the appellant dumped oily water overboard rather than passing it through the oily water separator, there was no indication the use of the oily water separator by the appellant was out of the ordinary or that the usage by the prior chief engineer was ordinary. The Pappadakis had different officers and crew and traveled to different ports with different loads under different weather conditions during the two time periods. The change in the officers and crew made

12

it impossible to explain the differences the usage of the oily water separator during the two time periods.

The presence of Tucker's chart would have discouraged an examination of the oily record books by the jury to review usage of the oily water separator during other time periods. The prejudice created by the summary chart outweighed any probative value by emphasizing a period in which the oily water separator was used more frequently by the previous chief engineer than the appellant had used during a similar period. Such an overemphasis prejudiced the appellant and confused the issues in the case more than any probative value the summary chart may have had.

## CONCLUSION

The appellant respectfully requests the Court to reverse the appellant's conviction and remand the case back to the district court.

> LAMBROS KATSIPIS
> By Counsel
>
>   s/Alan H. Yamamoto
> Alan H. Yamamoto
> 643 S. Washington Street
> Alexandria, VA  22314
> (703) 684-4700
> Counsel for Appellant

**CERTIFICATE OF COMPLIANCE WITH TYPEFACE AND LENGTH LIMITATIONS**

1.     This brief has been prepared using:

☐     WordPerfect 8 Times New Roman 14 point typeface.

2.     EXCLUSIVE of the corporate disclosure statement; table of contents; table of citations; statement with respect to oral argument; any addendum containing statutes, rules, or regulations; and the certificate of service, the brief contains:

☐     __13__ Pages.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions. If the court so directs, I will provide an electronic version of the brief and/or a copy of the word or line print-out.

                                    __s/Alan H. Yamamoto__
                                    Alan H. Yamamoto

14

CERTIFICATE OF SERVICE

      I hereby certify that on the 5th day of September 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following CM/ECF users:

to the counsel for appellee:

    Aaron Peter Avila
    John David Gunter, II
    United States Department of Justice
    P.O. Box 7415
    Washington, DC 2006-3795

                              /s/Alan H. Yamamoto
                              Alan H. Yamamoto